**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONSUMER PROTECTION CORPORATION, an Arizona Corporation, PETER STROJNIK, P.C., an Arizona Corporation AND DAVID M. DEPINTO, an individual, | : : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : : | NO. 2:09-cv-1783 |
| DIGITALSPEED COMMUNICATIONS, INC.,  ADAM H. PASTERNACK AND SLINGSHOT TECHNOLOGIES CORPORATION, | : : : : : : | ORAL ARGUMENT REQUESTED |
| Defendants. | : : | |

**DEFENDANTS DIGITALSPEED**
**COMMUNICATIONS, INC., ADAM H. PASTERNACK, AND**
**SLINGSHOT TECHNOLOGIES CORPORATION'S MOTION TO**
**DISMISS THE PLAINTIFFS FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants DigitalSpeed Communications, Inc., Adam H. Pasternack, and Slingshot

Technologies Corporation, by and through their undersigned counsel, hereby move to dismiss

Plaintiffs First Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  In support of this motion, Defendants rely upon and incorporate by

reference the accompanying Memorandum of Law filed with this Motion.  Oral argument is

requested.

Respectfully submitted,

/s/ Evan Barenbaum
Maurice R. Mitts, Esquire
Evan Barenbaum, Esquire
MITTS MILAVEC, LLC
Attorney Id. Nos.:  50297, 84140
Two Logan Square, 12th Floor
Eighteenth and Arch Streets
Philadelphia, PA  19103
Telephone:  215-569-1800
Facsimile:  215-569-1822

Dated:  October 6, 2009

Counsel for Defendants DigitalSpeed
Communications, Inc., Adam H. Pasternack,
and Slingshot Technologies Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CONSUMER PROTECTION CORPORATION, an Arizona Corporation, PETER STROJNIK, P.C., an Arizona Corporation AND DAVID M. DEPINTO, an individual,<br><br>            Plaintiffs,<br><br>            v.<br><br>DIGITALSPEED COMMUNICATIONS, INC.,  ADAM H. PASTERNACK AND SLINGSHOT TECHNOLOGIES CORPORATION,<br><br>            Defendants. | CIVIL ACTION<br><br><br><br><br><br><br>NO. 2:09-cv-1783<br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS DIGITALSPEED COMMUNICATIONS, INC.,**
**ADAM H. PASTERNACK AND SLINGSHOT TECHNOLOGIES**
**CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants DigitalSpeed Communications, Inc. ("*DigitalSpeed*"), Adam H. Pasternack ("*Pasternack*"), and Slingshot Technologies Corporation ("*Slingshot*") (collectively, the "*Defendants*"), by and through the undersigned counsel, submit this memorandum of law in support of their motion, pursuant to Federal Rules 12(b)(1) and 12(b)(6), to dismiss Plaintiffs' Consumer Protection Corporation ("*CPC*"), Peter Strojnik, P.C. ("*Strojnik, P.C.*"), and David M. Depinto ("*Depinto*") (collectively the "*Plaintiffs*") First Amended Class Action Complaint (the "*Complaint*").

**TABLE OF CONTENTS**

I.    BACKGROUND.................................................................................1

II.   LEGAL STANDARD .........................................................................2

III.  ARGUMENT .....................................................................................4

     A.  THE COURT LACKS SUBJECT MATTER JURISDICTION............................4

          1.  THE TCPA EXCLUDES FEDERAL QUESTION JURISDICTION.........4

          2.  THERE IS NO DIVERSITY JURISDICTION.......................................5

     B.  THE COUNTS AGAINST PASTERNACK FAIL TO STATE
         CLAIMS UPON WHICH RELIEF MAY BE GRANTED ..................................7

     C.  THE COUNTS FOR AIDING AND ABETTING AND CIVIL
         CONSPIRACY FAIL TO STATE A CLAIM UPON WHICH
         RELIEF MAY BE GRANTED ....................................................................9

     D.  PLAINTIFFS CPC AND DEPINTO HAVE NO STANDING
         BECAUSE THEY DID NOT RECEIVE THE TRANSMISSIONS
         ALLEGED IN THE COMPLAINT ............................................................12

     E.  PLAINTIFFS' COMPLAINT FAILS TO PROPERLY PLEAD
         CLAIMS UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(A).................14

IV.   CONCLUSION…...............................................................................15

CPC ARTICLES OF INCORPORATION.....................................................EXHIBIT A

STROJNIK FIRM CORPORATE INFORMATION..........................................EXHIBIT B

STROJNIK FIRM WEBSITE....................................................................EXHIBIT C

PETER STROJNIK ARIZONA BAR LISTING ..............................................EXHIBIT D

## I.    <u>BACKGROUND</u>

Plaintiffs are serial class action litigants who have filed no fewer than seven lawsuits making allegations similar to those in the Complaint.[1]  Plaintiff Consumer Protection Corporation is an Arizona Corporation whose sole incorporator is Peter Strojnik and whose sole shareholder and CEO is Tanya Strojnik.  (<u>See</u> CPC Articles of Incorporation, attached as Exhibit A).  Plaintiff Peter Strojnik, P.C. is an Arizona professional corporation.  Peter Strojnik is the President and CEO, and Tanya Strojnik is the Secretary and Treasurer of the Strojnik Firm.[2] (<u>See</u> Strojnik Firm Corporate Information, attached as Exhibit B).  David M. Depinto is an individual residing in Arizona.  (<u>See</u> Compl. ¶ 3.)

This Complaint is just one of the many virtually identical cases brought by the Strojnik Firm and Consumer Protection Corporation.  Each complaint makes conclusory allegations that defendants have sent unsolicited facsimiles in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.

Some of the defendants are companies mentioned in the allegedly unsolicited facsimiles.  Others are telecommunications companies, such as the Defendants in this action, DigitalSpeed and Slingshot.  Still others are private individuals, like Defendant Pasternack, with no apparent

---

[1] <u>See, e.g.</u>, <u>Consumer Protection Corp. v. Hot Stocks</u>, No. 08-2211 (D. Az.) (filed Sept. 9, 2008); <u>Consumer Protection Corp. v. Neo-Tech News</u>, No. 08-1983 (D. Az.) (filed Sept. 24, 2008); <u>Consumer Protection Corp. v. Radisson Hotels</u>, No. 08-2205 (D. Az.) (filed Sept. 9, 2008); <u>Consumer Protection Corp. v. Stock RX</u>, No. 08-1853 (D. Az.) (filed Sept. 3, 2008); <u>Strojnik v. ABC Defendants</u>, No. 08-1116 (D. Az) (filed June 6, 2008); <u>Strojnik v. BottomLineStocks</u>, No. 08-1327 (D. Az.) (filed July 18, 2008); <u>Strojnik v. Energy Bull</u>, No. 08-1017 (D. Az.) (filed June 2, 2008).

[2] Plaintiff Strojnik, P.C. should not be confused with The Law Firm of Peter Strojnik. Peter Strojnik Senior is the President and CEO of Plaintiff Strojnik, P.C., while Peter Strojnik Junior—attorney for Plaintiffs—is a member of The Law Firm of Peter Strojnik.  Both firms, along with CPC, appear to be located in the same suite, in the same building.  (<u>See</u> Compl.; Strojnik Firm Corporate Information, attached as Exhibit B; CPC Articles of Incorporation, attached as Exhibit A).

connection to the facsimiles at all. Defendants Pasternack and DigitalSpeed already have been dismissed for lack of personal jurisdiction from virtually identical actions Plaintiffs brought against them in Arizona. (Order Granting Mot. to Dismiss (Mar. 9, 2009) (stating that the plaintiff failed to present sufficient evidence showing that DigitalSpeed sent the subject facsimile and voicing "grave doubts" about whether the plaintiff would be able to satisfy requirements of Federal Rule of Civil Procedure 23 if it sought to have a class certified)).

Plaintiffs' Complaint alleges that Defendants, collectively, violated the TCPA by sending unsolicited faxes. Plaintiffs also allege that Defendants aided and abetted one another, and conspired among themselves, in violation of the TCPA. The Amended Complaint should be dismissed for several distinct reasons. Specifically, Plaintiffs' Complaint does not fall within the subject matter jurisdiction of the federal courts; Plaintiffs' Complaint fails to properly plead a TCPA claim against Defendant Pasternack; the TCPA does not extend to aiding and abetting or civil conspiracy; Plaintiffs CPC and Depinto lack standing to bring this suit pursuant to the TCPA; and the Complaint fails to provide sufficiently specific statement of facts to make out any cognizable claims for relief.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a complaint for lack of subject matter jurisdiction. Because Article III standing is a true jurisdictional question, rather than a question about the sufficiency of the claim, it also is properly addressed in a Rule 12(b)(1) motion. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). In contrast to the burden on a motion to dismiss for failure to state a claim, the plaintiff bears the burden of persuasion when a defendant in federal court challenges subject matter jurisdiction. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). "Furthermore, the district court may not presume the

truthfulness of plaintiff's allegations, but rather must 'evaluate for itself the merits of [the] jurisdictional claims.'"  Id. (quoting Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977) (brackets by Hedges court)).

A motion to dismiss for lack of subject matter jurisdiction may include both facial and factual challenges to the court's subject matter jurisdiction.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.  In reviewing a factual attack, the court may consider evidence outside the pleadings."  Id. (citations and footnote omitted); see United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514-15 (3d Cir. 2007).

A court considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) must accept as true all well-pleaded facts in the complaint, but need not credit a plaintiff's "bald assertions" or "legal conclusions."  Sands v. McCormick, 502 F.3d 263, 267 (3d Cir. 2007); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  A plaintiff has an "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" which "requires more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  A "formulaic recitation of the elements of a cause of action will not do."  Id.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  Courts need not "accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986). In making that determination, a court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

III.    **ARGUMENT**

A.    **The Court Lacks Subject Matter Jurisdiction**

The Complaint asserts federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.  Because neither is available, the court should dismiss the complaint under Rule 12(b)(1).

1.    **The TCPA Excludes Federal Question Jurisdiction**

The allegations of federal question jurisdiction are squarely controlled by the holding of the Third Circuit that federal question jurisdiction does not extend to claims under the TCPA. ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 515-19 (3d Cir. 1998).  Although the TCPA does create a cause of action (which thus could be said to "arise under" federal law), the Third Circuit concluded in a carefully reasoned opinion that two aspects of the TCPA counseled against extending federal question jurisdiction to private actions under the TCPA.  First, the section that creates the private right of action describes the action as one to be brought in a state court.  47 U.S.C. § 227(b)(3); see ErieNet, 156 F.3d at 515-17.  Second, the statute expressly authorizes federal jurisdiction over the cause of action it grants to States; the absence of such an authorization for the private right of action strongly counsels against recognizing federal jurisdiction over the private right of action.  Compare 47 U.S.C. § 227(b)(3), with 47 U.S.C. § 227(f)(2); see ErieNet, 156 F.3d at 517-518.

Each of the federal courts of appeals that has considered the question has reached the same conclusion as the Third Circuit.  Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd., 156 F.3d 432, 434-38 (2d Cir. 1998); International Science & Tech. Inst., Inc.  v. Inacom Communs., Inc., 106 F.3d 1146, 1152-55 (4th Cir. 1997); Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 509-14 (5th Cir. 1997); Murphy v. Lanier, 204 F.3d

911, 915 (9th Cir. 2000); <u>Nicholson v. Hooters of Augusta, Inc.</u>, 136 F.3d 1287, 1288-89 (11th

Cir.). But cf. <u>Brill v. Countrywide Home Loans, Inc.</u>, 427 F.3d 446, 449-52 (7th Cir. 2005)

(authorizing removal of TCPA action from state court).  There is no basis for a contrary ruling by

this court.

### 2.    There is No Diversity Jurisdiction

Plaintiffs also claim that this Court has subject matter jurisdiction on the basis of

diversity of citizenship and that the amount in controversy exceeds the jurisdictional minimum

pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 12 U.S.C. § 1332(d).[3]  (Compl. ¶

12.)  Federal courts have jurisdiction over diversity actions under the CAFA only if state courts

would have had jurisdiction over the same class action.[4]  Thus, where state law would bar a class

action under the TCPA, the CAFA does not provide federal jurisdiction over a TCPA class

action even if the parties are diverse and the amount in controversy satisfies the CAFA.  The case

is on all fours with the Second Circuit's decision in <u>Bonime v. Avaya, Inc.</u>, 547 F.3d 497 (2d Cir.

2008).  In that case, a plaintiff brought a putative TCPA class action in a federal district court in

New York.  The claims there, as in this case, were not large enough to meet the amount in

---

[3] Plaintiffs' individual claims would fail to meet the amount in controversy threshold of $75,000 required for establishing diversity jurisdiction for individual claims pursuant to 28 U.S.C. § 1332(a).

[4] A strong argument can be made that the TCPA's explicit reference to state courts implicitly bars diversity jurisdiction entirely.  If Congress intended, as the courts of appeals have held, that state courts have exclusive jurisdiction over the private right of action under the TCPA, it would make little sense to hold that private parties can bring those claims in federal court under diversity jurisdiction even though it is well-settled that they cannot bring them directly under federal question jurisdiction.  <u>Cf. Brill</u>, 427 F.3d at 450 ("[I]f state jurisdiction really is "exclusive," then it knocks out § 1332 as well as § 1331.").  Particularly after the Class Action Fairness Act made it practicable to extend diversity jurisdiction to class actions that involve small individual claims, this would render Congress's intent incoherent.  Yet, in light of the contrary conclusions of the Second, Seventh, and Tenth Circuits (<u>see</u> <u>Gottlieb v. Carnival Corp.</u>, 436 F.3d 335, 338-41 (2d Cir. 2006); <u>Brill</u>, 427 F.3d at 450; <u>U.S. Fax Law Center, Inc v. iHire, Inc.</u>, 476 F.3d 1112, 1116-18 (10th Cir. 2007)) and the other overwhelming arguments in support of dismissal, we do not press this argument on the court at this time.

controversy requirement for individual diversity actions under 28 U.S.C. § 1332(a).  Thus, like

the plaintiffs here, Bonime relied on the CAFA to establish diversity.  The difficulty for Bonime,

however, was that New York law forbids a class action to recover statutory damages unless the

statute specifically authorizes class actions.  Because the TCPA does not authorize class actions,

New York courts consistently have barred TCPA class actions in state court.  Bonime, 547 F.3d

at 500 (citing state court decisions).  Because the TCPA contemplates that states might wish to

prevent TCPA actions in their courts, 47 U.S.C. § 227(b)(3), there is little doubt that New York

has the authority to reject TCPA actions.  See Int'l Science, 106 F.3d at 1158.[5]  Accordingly, the

Second Circuit affirmed the dismissal of Bonime's purported federal TCPA class action.  Id. at

500-502; see id. at 502-04 (Calabresi, J., concurring); Leyse v. Clear Channel Broadcasting, Inc.,

2008 U.S. App. LEXIS 24432 (2d Cir. Dec. 2, 2008) (following Bonime); Holster v. Gatco, Inc.,

2008 U.S. App. LEXIS 23203 (2d Cir. Oct. 31, 2008) (following Bonime).

    The same analysis applies here.  The relevant law in this case is the law of Pennsylvania.[6]

Pennsylvania courts already have held that they will not entertain a nationwide class action under

---

    [5] Because the TCPA by its terms contemplates state rules that bar TCPA actions, the
question presented here is not related to the general Erie question raised by Shady Grove
Orthopedic Assocs. v. Allstate Insurance Company, 549 F.3d 137 (2d Cir. 2008), cert. granted
(May 4, 2009) (No. 08-1008) (considering whether a New York statute can bar a class action
brought in federal court under the CAFA).

    [6] See Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007) ("It is well established
that in a diversity action, a district court must apply the choice of law rules of the forum state to
determine what law will govern the substantive issues of the case."); Klaxon Co. v. Stentor Elec.
Mfg. Co., 313 U.S. 487, 496 (1941) (same).  Applying the hybrid interest analysis of the
Pennsylvania Supreme Court, Griffith v. United Air Lines, Inc., 203 A.2d 796, 802-06 (Pa.
1964); see Troxel v. DuPont Institute, 636 A.2d 1179, 1180-1181 (Pa. Super. Ct. 1994), it seems
plain that Pennsylvania courts (like other courts in which TCPA actions have been brought)
would apply their own substantive law.  See Weitzner v. Vaccess America Inc., 5 Pa. D. & C.
5th 95, 97 (Pa. Com. Pl. 2008) (stating, in TCPA case involving a Pennsylvania defendant and
New York Plaintiffs, that "the substantive case law governing the Commonwealth of
Pennsylvania applies"), appeal dismissed, Weitzner v. Vaccess America Inc., 976 A.2d 1225 (Pa.
Super. Ct. 2009); see also Elias v. Ungar's Food Products, Inc., No. 06-2448, 2009 U.S. Dist.

the TCPA.  Weitzner v. Vaccess America Inc., 5 Pa. D. & C. 5th 95, 107-113 (Pa. Com. Pl.

2008), appeal quashed, Weitzner v. Vaccess America Inc., 976 A.2d 1225 (Pa. Super. 2009).

Recognizing that cases like Bonime had barred local class actions in other states, the Weitzner

court concluded that it would be inappropriate for a Pennsylvania court to entertain a nationwide

class action.  As that court explained, recognition of such an action would offend "principles of

full faith and credit; due process, [and] comity" fundamental to Pennsylvania jurisprudence.  5

Pa. D. & C. 5th at 113; cf. Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) (discussing Due

Process limitations on state-court national class actions); Shulick v. PaineWebber, Inc., 722 A.2d

148, 151 (Pa. 1998) (noting concerns about practicality of state-court national class actions).

Because Weitzner presents an authoritative resolution of the question by the Pennsylvania state

courts, this court should reject diversity jurisdiction as a basis for entertaining the Complaint.

   Because there is no basis for exercising either federal question or diversity jurisdiction,

the court should dismiss the Complaint under Rule 12(b)(1).

   **B.    The Counts Against Pasternack Fail to State Claims upon Which Relief May
          Be Granted**

   Plaintiffs contend that Pasternack is personally liable for the TCPA violations allegedly

committed by DigitalSpeed and Slingshot. Plaintiffs contend that those companies are an alter

ego of Pasternack.  (Compl. ¶ 31.)  Because Plaintiffs have not pleaded sufficient facts to justify

adjudication of such a claim, it should be dismissed.

   Generally, of course, a shareholder is not personally liable for the obligations of a

corporation.  Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994).

"Piercing the corporate veil is . . . an extraordinary remedy preserved for cases involving

---

LEXIS 74140, *11 n.1 (D.N.J. Aug. 20, 2009) (reasoning that, in a nationwide class action suit
brought in New Jersey, "there is no state with a 'more significant relationship' than New
Jersey").

exceptional circumstances." <u>Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.</u>, No. 03-3020, 2005 U.S. Dist. LEXIS 3495 (E.D. Pa. March 8, 2005) (quoting <u>Village at Camelback Prop. Owners Ass'n v. Carr</u>, 538 A.2d 528, 533 (Pa. Super. Ct. 1988)) (granting motion to dismiss claim that corporation was alter ego of shareholder).  Courts are "concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded . . . ." <u>Kaplan</u>, 19 F.3d at 1521 (citation and quotation marks omitted). The Third Circuit summarized the characteristic proof for piercing the corporate veil as including:

> [F]ailure to observe corporate formalities, non-payment of dividends, insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant shareholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

<u>Id.</u>  Thus, the mere failure to observe corporate formalities does not justify piercing the corporate veil.  <u>Id.</u>  Rather, to invoke this drastic remedy, Plaintiffs must show that the corporation "became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefit in fraud of its creditors." <u>Id.</u>  "Because alter ego is akin to and has elements of fraud, . . . it must be shown by clear and convincing evidence." <u>Id.</u> at 1522; <u>see</u> <u>Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk</u>, 332 F.3d 188, 192 (3d Cir. 2003).

Examined under the appropriate legal standard and burden of proof, the claims against Pasternack cannot stand.  The Complaint wholly fails to allege any factual basis for such a theory

of liability, much less one that would satisfy a clear and convincing evidence standard. Plaintiffs' Complaint alleges in the most general terms that Pasternack is the alter ego of DigitalSpeed and Slingshot.  It offers no facts, or even allegations, to indicate that Pasternack acted in his individual capacity.  Rather, it provides an unadorned recitation of the elements of the theory.  (Compl. ¶ 31.)  That is not sufficient to satisfy Federal Rule of Civil Procedure. 8(a). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (A "formulaic recitation of the elements of a cause of action will not do."); see Papasan v. Allain, 478 U.S. 265, 286 (1986) ([Courts need not] "accept as true a legal conclusion couched as a factual allegation."). Application of that reasoning to dismiss conclusory alter ego allegations is commonplace.  E.g., De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (affirming dismissal of alter ego claim because the pleadings were "devoid of any specific facts or circumstances supporting this assertion") (emphasis omitted); Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 677-82 (6th Cir. 2006); Medical Supply Chain, Inc. v. General Electric Co., 144 Fed. Appx. 708, 713 (10th Cir. 2005) (affirming district court's dismissal of antitrust claims in complaint that made "no well-pleaded factual allegations that would support its conclusory legal allegation" of alter ego claim).

Because Plaintiffs' Complaint recites the elements of an alter ego theory without providing substantial factual allegations, the Court should dismiss the claims against Pasternack for failure to state a claim upon which relief may be granted.

### C.    The Counts for Aiding and Abetting and Civil Conspiracy Fail to State Claims upon Which Relief May Be Granted

Counts III and IV of Plaintiffs' Complaint assert claims for secondary liability under the TCPA based on theories of civil conspiracy and aiding and abetting, respectively.  Because

neither type of liability is available under the TCPA, the court should dismiss those claims from the Complaint.

Starting with the language of the statute, the TCPA creates civil liability for "any person" who violates the TCPA, and provides that a private right of action may be brought in an appropriate court of this state. 47 U.S.C. § 227(b)(1), (b)(3). Section 227 does not, however, include any provisions for secondary civil liability. "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 182 (1994) (discussing aiding and abetting in the context of § 10(b) of the Securities Exchange Act). Whether a private claim for aiding and abetting is available hinges on an analysis of statutory language. See Central Bank, 511 U.S. at 182 ("Congress . . . has taken a statute-by-statute approach to civil aiding and abetting liability."); Pennsylvania Ass'n of Edwards Heirs v. Rightenour, et. al, 235 F.3d 839, 843 (3d Cir. 2000) (noting that Central Bank "dramatically altered the landscape" and extending it to RICO claims). Thus, in Rightenour, the Third Circuit emphasized that "Congress has not enacted a general civil aiding and abetting statute—either for suits by the Government . . . or for suits by private parties." Rightenour, 235 F.3d at 844 (quoting Central Bank, 511 U.S. at 181). As the court explained, "nothing in Central Bank indicates that its reasoning is specific to the particular statute presented in that case." Rightenour, 235 F.3d at 843.

The only federal district court to consider the question to date explicitly adopted Central Bank's approach and held that the TCPA cause of action does not extend to aiding and abetting. See Baltimore-Washington Telephone Company v. The Hot Leads Company, LLC, 584 F. Supp.

2d 736, 745-46 (D. Md. 2008).  The court dismissed the argument that Maryland common law generally recognizes an aiding and abetting theory, explaining that common law doctrines do not apply to statutory actions like the TCPA.  Id. at 745.  The court emphasized that "civil aiding and abetting liability is determined on a statute-by-statute basis," and "Congress [knows] how to impose aiding and abetting when it [chooses] to do so."  Id. at 745 (quoting Central Bank, 511 U.S. at 176).  Hence, the court concluded, the absence of aiding and abetting provisions from the TCPA means that the statute does not contemplate aiding and abetting liability.  Id. at 746.

The same reasoning applies to Count III of Plaintiffs' Complaint with regard to civil conspiracy.  Again, there is no general federal civil conspiracy statute.  Thus, the absence of statutory provisions for civil conspiracy liability mandates an inference that no such liability exists.  See, e.g., Central Bank, 511 U.S. at 200 n.12 (Stevens, J., dissenting) (noting that "the . . . rationale [of the majority in Central Bank] would sweep away the decisions recognizing that a defendant may be found liable in a private action for conspiring to violate [securities laws]"); Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 841-43 (2d Cir. 1998) ("[W]e agree . . . that the Supreme Court's reasoning in Central Bank applies not only to aiding and abetting claims, but to conspiracy claims as well."); Glaser v. Enzo BioChem, Inc., 126 Fed. Appx. 593, 599 (4th Cir. 2005) ("The rationale of Central Bank with respect to aiding and abetting applies equally to civil conspiracy."); Regents of the University of California v. Credit Suisse First Boston, 482 F.3d 372, 392 n.38 (5th Cir. 2007); In re GlenFed, Inc. Securities Litigation, 60 F.3d 591, 592 (9th Cir. 1995) ("The Court's rationale precludes a private right of action for 'conspiracy' liability.").  Although courts have not yet specifically applied Central Bank to TCPA claims for civil conspiracy, the logic of Central Bank, the Third Circuit's expansive reading of it in Rightenour, and the consistent holdings applying Central Bank to ban

civil conspiracy claims under other federal statutes unite to mandate dismissal of that claim as well.

### D.    Plaintiffs CPC and Depinto Have No Standing Because They Did Not Receive the Transmissions Alleged in the Complaint

Article III of the Constitution of the United States limits jurisdiction of the federal courts to cases and controversies.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Id. at 560.  The party invoking federal jurisdiction bears the burden of showing that the plaintiff suffered an "injury in fact."  Id. at 560-61.  In this case, because none of the transmissions alleged in the complaint were sent to CPC or Depinto, they have not suffered an injury in fact under the TCPA and thus do not have standing to press claims under that statute.

With respect to CPC, Plaintiffs allege that CPC received three facsimile transmissions from Defendants; the first on May 28, 2008,[7] the second on June 23, 2008, and the third on August 1, 2008.  (See Compl. ¶¶ 16, 17, 23.)  The May and June facsimiles, however, were sent before CPC existed.  CPC was incorporated under Arizona law on July 1, 2008, when its Articles of Incorporation were received and filed by the Arizona Corporate Commission.  (See CPC Articles of Incorporation, attached as Exhibit A).  Under Arizona law, "incorporation occurs and the corporate existence begins when the articles of incorporation and certificate of disclosure are delivered to the commission for filing."  Ariz. Rev. Stat. Ann. § 10-203 (2009).  Therefore,

---

[7] Notwithstanding the allegation in Compl. ¶ 25 that all facsimiles discussed in the complaint are attached as Exhibit 1 to the complaint, the facsimile allegedly received May 28, 2008 at ¶ 13 of Plaintiffs' Complaint is one of three not attached to the Complaint.  The facsimiles alleged at ¶¶ 18 and 22 also are omitted.

because CPC did not exist until July 1, it could not have been injured by the May and June transmissions and thus has no standing with respect to those facsimiles.

With respect to the August 1, 2008 facsimile, the problem is that the transmission was sent not to CPC but to Peter Strojnik, P.C. The facsimile is attached to the Complaint as part of Exhibit 1 to the Complaint. (Compl. ¶ 16, Exhibit 1.) The transmission data at the top of the document shows that it was sent to "(602) 296-0135." It is plain, however, from the firm's Web site and State Bar Directory that this number is owned not by CPC but rather by Peter Strojnik, P.C. See Exhibit C (printout of Strojnik Firm website from http://www.strojnik.com); Exhibit D (Peter Strojnik Arizona Bar listing from http://www.azbar.org/LegalResources/findlawyer.cfm). It is factually impossible that a corporation suffered a personalized, redressable injury caused by a facsimile that was received by a fax machine whose number is owned by another company. See, e.g., U.S. Fax Law Center, Inc v. iHire, Inc., 476 F.3d 1112, 1118-19 (10th Cir. 2007) (discussing standing of "individuals harmed by unsolicited telephone calls or faxes" and explaining that "Congress enacted the TCPA to 'protect the privacy interests of residential telephone subscribers'" (quoting S. Rep. No. 102-178, at 1 (1991), U.S. Code Cong. & Admin. News 1991, p. 1968)); Kopff v. World Research Group, LLC, 568 F. Supp. 2d 39, 42 (D.D.C. 2008) (dismissing for lack of standing a TCPA claim brought by wife based on faxes addressed to husband); Kennard v. Electronic Data Systems Corp., No. 296-93-98, 1998 WL 34336245, *1 (Tex. Dist. Ct. Oct. 23, 1998) ("It is the person who owned or operated the fax machine which received the unsolicited fax advertisement who has standing to bring a claim under the TCPA"). Because CPC has failed to show a "personalized, redressable injury" required for standing, its claims must be dismissed. See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 135 (3d Cir. 2000).

A similar problem afflicts the transmission allegedly received by David Depinto on December 21, 2008.  (See Compl. ¶ 24.)  The transmission data at the top of that document (also in Exhibit 1 to the Complaint) shows that it was sent to "(623) 934-9029."  Again, that number is not registered to David Depinto.  Rather, it is listed solely to a Brigitte Depinto, whose only listed household members are a Michael Depinto, Sr. and Mike Depinto.  Because David Depinto is not the telephone subscriber to whose number the transmission was sent, he has no standing to pursue a suit under the TCPA.  His claims must be dismissed.

**E.    Plaintiffs' Complaint Fails to Properly Plead Claims under Federal Rule of Civil Procedure 8(a)**

Finally, the Complaint does not properly plead a cause of action under the TCPA.  The Federal Rules require "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  As discussed above, a complaint that does no more than provide a "formulaic recitation of the elements of a cause of action" is inadequate. Twombly, 550 U.S. at 555.  The allegations in ¶¶15-26 do not go beyond a "formulaic recitation."

In this case, the allegations that Defendants have violated the TCPA are nothing more than conclusory.  Most obviously, there is no explanation of the role that any particular defendant or defendants had with respect to any particular facsimile.  Rather, there are conclusory allegations that Defendants, collectively, "sent" the facsimiles.  (See Compl. ¶¶ 15-24; Exhibit 1 to Compl.)  But the facsimiles themselves (attached as Exhibit 1) do not mention Defendants in any way.  In the absence of some explanation of facts that would connect Defendants to the specific transmissions in a cognizable way, the complaint is nothing more than "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986).  As such, this Court should dismiss it for failure to state a claim upon which relief can be granted.

IV.     **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court dismiss Plaintiffs' First

Amended Class Action Complaint in its entirety.


                                        /s/ Evan Barenbaum
                                        Maurice R. Mitts, Esquire
                                        Evan Barenbaum, Esquire
                                        MITTS MILAVEC, LLC
                                        Attorney Id. Nos.:  50297, 84140
                                        Two Logan Square, 12th Floor
                                        Eighteenth and Arch Streets
                                        Philadelphia, PA  19103
                                        Telephone:  215-569-1800
                                        Facsimile:  215-569-1822

Dated:  October 6, 2009
                                        Counsel for Defendants DigitalSpeed
                                        Communications, Inc., Adam H. Pasternack,
                                        and Slingshot Technologies Corporation

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| CONSUMER PROTECTION CORPORATION, an Arizona Corporation, PETER STROJNIK, P.C., an Arizona Corporation AND DAVID M. DEPINTO, an individual, | : CIVIL ACTION<br>:<br>:<br>:<br>:<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | : NO. 2:09-cv-1783<br>: |
| DIGITALSPEED COMMUNICATIONS, INC.,  ADAM H. PASTERNACK AND SLINGSHOT TECHNOLOGIES CORPORATION, | :<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |

**ORDER GRANTING DEFENDANTS DIGITALSPEED
COMMUNICATIONS, INC., ADAM H. PASTERNACK, AND
SLINGSHOT TECHNOLOGIES CORPORATION'S MOTION TO
<u>DISMISS THE PLAINTIFFS FIRST AMENDED CLASS ACTION COMPLAINT</u>**

AND NOW, this _____ day of _____, 2009, upon consideration of

Defendants DigitalSpeed Communications, Inc., Adam H. Pasternack, and Slingshot

Technologies Corporation's Motion of to Dismiss Plaintiffs' First Amended Class Action

Complaint (the "Motion") and any response thereto, it is hereby

ORDERED that the Motion is GRANTED and the Plaintiffs' Complaint is DISMISSED with respect to all claims therein against Defendants DigitalSpeed Communications, Inc., Adam H. Pasternack, and Slingshot Technologies Corporation, with prejudice.

BY THE COURT

_____
The Honorable Petrese B. Tucker, U.S.D.J.